UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AEZ RENT A CAR NEW YORK, LLC,

               Plaintiff,

      -against-

VISA, INC. and VISA USA, INC.,

               Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-02534 (OEM) (PK)

ORELIA E. MERCHANT, United States District Judge:

    Plaintiff AEZ Rent A Car New York, LLC ("AEZ") brings this breach of contract claim against Defendants Visa, Inc., and Visa USA, Inc. ("Defendants"), alleging that Defendants failed to reimburse 294 cardholders for the costs of damage repairs to vehicles rented from AEZ. Amended Complaint ("Am. Compl."), ECF 20. Before the Court is Defendants' fully-briefed motion for summary judgment under Federal Rule of Civil Procedure 56.[1] For the following reasons, Defendants' motion is granted.

---

[1] Defendants' Notice of Motion for Summary Judgment, ECF 54; Declaration of Attorney Jeffrey J. Imeri, ECF 54-1; Defendants' Local Civil Rule 56.1 Statement ("Defs.' 56.1"), ECF 54-2; Declaration of Jo-Ann Quintana ("Quintana Decl."), Senior Director, Global Litigation and Competition at Visa USA, ECF 54-3; Declaration of Lindsey Fox ("Fox Decl."), Bankcard Analyst at Allianz Partner, ECF 54-4; Defendants' Memorandum of Law In Support of Motion for Summary Judgment ("Defs.' Mem."), ECF 54-5; Plaintiff's 56.1 Counterstatement ("Pl.'s 56.1"), ECF 60; Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n"), ECF 64; Exhibits A to D, ECF 64-1-64-5; Defendants' Reply ("Defs.' Reply"), ECF 65.

1

## BACKGROUND[2]

### A.   The Parties

Plaintiff AEZ is a vehicle rental company operating out of locations in New York.  Am. Compl. ¶ 8.

Defendant Visa, Inc. ("Visa") is a global payments technology company that connects consumers, businesses and merchants, and financial institutions to facilitate electronic payments and transactions instead of cash and checks.  Defs.' 56.1 ¶¶ 2, 11.  Visa owns and manages the Visa brand.  *Id.* ¶ 4.  Visa does not issue credit cards.  *Id.* ¶¶ 7, 17.  Instead, financial institutions, also known as issuing banks, issue credit cards.  *Id.*  Each issuing financial institution using Visa-branded payment cards independently determines the terms and conditions of each issued card.  *Id.* ¶ 6.  As such, Visa does not have a direct relationship with cardholders; rather, the direct relationship exits between the cardholders and the financial institutions that issue the credit cards.  *Id.* ¶ 8-9.

Defendant Visa USA, Inc. ("Visa USA"), is a subsidiary of Defendant Visa, Inc.

### B.   The Auto Rental Collision Damage Waiver

AEZ has a standard form rental agreement that rental customers sign when renting its cars.  That form contains a collision damage waiver ("AEZ CDW"), which states that:

> By initialing, Renter DECLINES Collision Damage Waiver (CDW)[.]  Renter is providing coverage through but not limited to either Sales Tax, their own personal policy, credit card, or coverage purchased from a third party.

AEZ Rental Form, ECF 20.  The form's additional terms and conditions state that:

---

[2] The facts in this section are drawn from the parties' 56.1 statements and supporting declarations and exhibits. These facts are undisputed unless otherwise stated.  Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence and are denied with only a conclusory statement by the other party or without citation to evidence, the Court finds such facts to be true.  E.D.N.Y. Local Rule 56.1 (c)-(d).

> You are responsible for damages to and loss of the Vehicle, [i]ncluding any consequential damages, as explained in Paragraph 4 of this Agreement, unless You purchase a damage waiver, where available.

*Id.*

Banks and financial institutions that issue credit cards offer certain benefits to cardholders, including an auto rental collision damage waiver often found in the credit card's benefits guide. Defs.' 56.1 ¶ 19. Allianz is a third-party plan benefits administrator that processes reimbursement claims submitted by cardholders pursuant to auto rental collision damage waivers. *Id.* ¶ 13.

**C.    AEZ's Allegations Based on Cardholder Claims**

Plaintiff alleges that between March 2019 and December 2022, 294 customers who rented cars through AEZ using their Visa-branded credit cards declined the AEZ CDW and instead obtained coverage through a "Visa Collision Damage Waiver." Am. Compl. ¶¶ 12-13. Plaintiff alleges that these 294 rental customers were involved in various types of collisions, where the AEZ rental cars sustained damages. Plaintiff further alleges that, pursuant to the collision damage waiver, these 294 customers filed claims with their credit cards, but that Visa and Visa USA failed to reimburse them for the cost of damage repairs as required by the "Visa Collision Damage Waiver."

The 294 individuals rented the vehicles using various types of Visa-branded credit cards, including Chase Sapphire Preferred, Chase Sapphire Reserve, Business, Student. *See* ROGs. Resp. 3, ECF 42-3. These issuing banks of the Visa-branded credit cards include Auto Rental Collision Damage Waiver as card benefits. *See, e.g.*, Ex. to Am. Compl., ECF 20; Defs.' Pre-Motion Conference Request ("Defs.' PMC"), Ex. B, ECF 42-4; Plaintiff's Supplemental Letter, ECF 66.

3

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint in the Eastern District of New York on April 3, 2023. Complaint, ECF 1. The case was first assigned to U.S. District Judge Rachel P. Kovner.

On May 15, 2023, Defendants filed a pre-motion conference request on their anticipated motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6). Visa argued that AEZ did not have standing to sue because there was no privity of contract between Visa and AEZ and that the complaint did not allege that the cardholders had assigned their rights to AEZ; that there was no "mention of Visa anywhere" on the purported "Visa Collision Damage Waiver" attached to the complaint that Plaintiff alleged was the agreement between Defendants and Plaintiff; and that each of the claims pertained to different types of credit cards that have their own benefit guides with different terms and conditions of the benefits offered to the cardholders. ECF 9. Plaintiff filed a response letter, and the Court granted the pre-motion conference request.

A conference was held on June 6, 2023. At that conference,

> The parties agreed to meet and confer about the issues raised in defendants' pre-motion conference letter, including (1) whether plaintiff has assignments of claim from all the cardholders whose claims are at issue in this case; (2) what cardholder agreements govern for each of the cardholders at issue in this case; and (3) whether any of the cardholders' claims are time-barred in light of the terms of the applicable cardholder agreements.

6/6/23 Minute Entry & Order. Judge Kovner directed the parties to file a joint status report by July 21, 2023. *Id.*

On July 7, 2023, this case was reassigned to the undersigned.

On July 21, 2023, the parties filed a joint status report, indicating that Plaintiff had turned over proof of the assignments of claims to Defendants, and that Defendants were in the process of

4

providing the applicable cardholder agreements. ECF 14. The parties also indicated that they were engaging in limited pre-answer discovery and requested the postponing of full discovery. *Id.*

The parties filed a proposed scheduling order, setting deadlines to amend pleadings, discovery, and motion practice. ECF 15.

### A.     Operative Pleadings

On November 16, 2023, Plaintiff filed an amended complaint, which is the operative complaint in this action. ECF 20. The amended complaint asserts one count of breach of contract on behalf of 294 Visa cardholders, alleging that Defendants breached the terms and conditions of the "Visa Collision Damage Waiver," and seeking at least $1,656,122.25 in damages. *Id.*

On November 22, 2023, Defendants filed an answer. ECF 21. In denying the allegations contained in the amended complaint, Defendants assert that "Defendants are not a party to the cardholder agreements, [that] [the] cardholder agreements are between the cardholder and the bank that issued the payment card, and that "some cardholder agreements from issuing banks include a 'collision damage waiver" with varying provisions depending on the type of payment card issued. *Id.* ¶ 11. Specifically, Defendants' affirmative defenses include, among other things, that "there is no contractual relationship or agreement between Plaintiff and the Defendants, [s]pecifically, the defendants never entered into the contract or agreement alleged in the Complaint" *id.* ¶ 35, and that "any contract-based claims against the defendants must be dismissed based on the lack of a valid, enforceable contract between the defendants and the plaintiff," *id.* ¶ 36. Additionally, Defendants assert a counterclaim for fraud against Plaintiff, *id.* ¶ 47-59, and Plaintiff filed an answer to the counterclaim of fraud. ECF 22. The counterclaim for fraud was ultimately withdrawn by Defendants. ECF 63.

5

B.     **Defendants' Motion for Summary Judgment**

Discovery closed on February 5, 2025. Docket Order dated 2/5/2025. Defendants filed a pre-motion conference request on an anticipated motion for summary judgment on March 20, 2025, ECF 42, and Plaintiff filed a response on April 4, 2025, ECF 43, and the parties filed the Proposed joint pretrial order ("JPTO") on April 7, 2025, ECF 44. The Court granted Defendants' pre-motion conference request, and following that conference, set a briefing schedule on Defendants' motion for summary judgment. 5/1/25 Minute Entry.

Plaintiff moved to withdraw its jury demand, ECF 51, and Defendants moved to sever and bifurcate the trial, ECF 49.

Defendants filed their motion for summary judgment on May 22, 2025, and on June 25, 2025, the Court heard oral arguments on the motion. Following oral argument, the Court denied Plaintiff's motion to withdraw jury demand and Defendants' motion to sever and directed supplemental briefings from the parties on Defendants' motion for summary judgment. 6/25/25 Minute Entry.

## LEGAL STANDARDS

A.     **Federal Rule of Civil Procedure 56**

In resolving a motion for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56"), the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might

affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, however, the burden shifts to the non-moving party to present some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp.*, 477 U.S. at 322-23. The non-moving party must show more than "[t]he mere existence of a scintilla of evidence" in support of his or her position; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted). In other words, to defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

Rule 56(c) requires that parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

7

Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

**B.     Local Civil Rule 56.1**

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1") provides that a party moving for summary judgment must include a statement of material facts as to which the moving party contends there is no genuine issue to be tried. Local Civil Rule 56.1(a). In turn, a party opposing a motion for summary judgment must "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party." Local Civil Rule 56.1(b).

In the 56.1 statement and 56.1 counterstatement, each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c). Local Civil Rule 56.1(d). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted

8

by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c).

## DISCUSSION

Plaintiff asserts one cause of action against Defendants for breach of contract. To prevail on a breach of contract claim under New York law, Plaintiff must establish the following four elements: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 392 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). "The elements of contract formation are: (1) offer, (2) acceptance, (3) consideration, (4) mutual assent, and (5) mutual intent to be bound." *OTG Brands, LLC v. Walgreen Co.*, 13-CV-09066 (ALC), 2015 WL 1499559, at *6 (S.D.N.Y. Mar. 31, 2015) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

Defendants argue that they are entitled to summary judgment because no contract existed between Visa and the cardholders. Defendants argue that Plaintiff's assertion that the collision damage waivers created a contract is incorrect: rather, the collision damage waiver is a card benefit offered by the issuing bank to a cardholder. Further, Defendants argue that even assuming *arguendo* that the card benefits constituted a binding agreement between Visa and the cardholders, they are still entitled to summary judgment because Plaintiff has failed to meet certain conditions precedent to trigger Defendants' performance on said contracts.

In support, Defendants point to card benefits guides for a variety of Visa-branded credit cards issued by banks, including Bank of America, Chase, Barclays, and Capital One. Defs.' PMC Ex. B. Each of the card benefits guides contains a collision damage waiver that sets out the process for a claimant to file reimbursement claim with the Plan Administrator for costs of repairs. *Id.*

9

These collision damage waivers do not list Visa, Inc. or Visa USA as the issuer of these card benefits. *Id.* Defendants submit a sworn declaration by Jo-Ann Quintana, a Senior Director, Global Litigation and Competition at Visa USA, who attests that Visa is a global card networks company that connects customers, merchants, and financial institutions to facilitate electronic transactions; Visa is not an issuing bank and therefore does not issue credit cards or service a cardholders' accounts; and the benefits and rights of a cardholder with respect to the credit cards, including a collision damage waiver, are determined by the issuing bank. Quintana Decl. ¶¶ 3, 7, 9, 10. Quintana states that Visa did not enter into any agreement with AEZ, a merchant, regarding the payment of benefits for collision damages. *Id.* ¶ 10. Further, Defendants submit the declaration of Lindsey Fox, a bankcard analyst at Allianz Partner, in which Fox attests that issuing banks provide a collision damage waiver as a benefit to cardholders for their use of the credit cards to rent vehicles and that the agreements between the cardholders and the issuing banks determine the specific terms and conditions of the waiver. Fox Decl. ¶¶ 3, 5. Defendants also point to a summary spreadsheet of the 294 claims showing the issuing banks implicated for each claim, none of which is "Visa." Defs' PMC Ex. D, ECF 42-6.

Construing the record in the light most favorable to Plaintiff, the Court finds that Defendants have carried their initial burden of showing the absence of a genuine dispute of material fact that no contract existed between Plaintiff AEZ and Defendants Visa, Inc. and Visa USA.

The burden therefore shifts to Plaintiff to show more than "[t]he mere existence of a scintilla of evidence in support of" its position. *Anderson*, 477 U.S. at 252. Plaintiff disputes these asserted facts, using a combination of two blanket stock responses: that these are not statements of material fact because they "do[] not contain any factual allegations concerning the facts and

10

circumstances underlying Plaintiff's cause of action, but only generalized conclusory allegations that do not constitute 'material facts'" and that some statements in Quintana and Fox's declarations are inadmissible hearsay. *See generally* Pl.'s 56.1. However, the question of whether there is an agreement between Defendants and the cardholders goes to the heart of Plaintiff's cause of action for breach of contract,[3] because the existence of an enforceable agreement is a "prerequisite to any breach of contract claim." *NRW, Inc. v. Bindra*, 12-CV-8555 (RJS), 2014 WL 4449779 (S.D.N.Y. Sept. 10, 2014). Thus, Defendants' statements that, as a card payment network company, they do not issue credit cards and therefore they do not determine the terms and conditions of the credit cards offered by the issuing bank, including the collision damage waiver, are material facts. *See Anderson*, 477 U.S. at 248 (a fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law").

Further, Plaintiff's assertion that the statements contained in the declarations of Quintana and Fox are inadmissible hearsay and therefore are not competent evidence to support Defendants' motion, is without merit. Affidavits and declarations are commonly used in deciding summary judgment motions when they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The declarations submitted by Defendants are consistent with the requirements set forth in Rule 56(c)(4). Quintana's declaration contains factual statements made from her personal knowledge by virtue of her position and responsibilities as a Senior Director for Global Litigation and Competition at Visa and her familiarity with Visa's business practices, procedures and records. Quintana Decl. ¶ 2. Likewise, Fox attested to facts known to

---

[3] For purposes of ruling on this summary judgment motion, the Court does not reach the question of whether the 294 cardholders properly assigned their rights to AEZ, as Defendants have not briefed this issue in their memorandum of law, and the parties' July 21, 2023 status report stated that Plaintiff had provided the assignments of claims to Defendants, and there was no indication that Defendants would challenge these.

her from her Bankcard Analyst position at Allianz Partner and her familiarity with Allianz Partner's business practices, procedures and records. Fox Decl. ¶ 2. Affiants "may also testify to the contents of records they have reviewed in their official capacities." *Fletcher v. Standard Fire Ins. Co.*, 80 F. Supp. 3d 386, 394 (E.D.N.Y. 2015); *see Freedom Mortgage Corporation v. Habeeb*, 19-CV-05881 (JMA) (JMW), 2023 WL 5181444, at *7 n.7 (E.D.N.Y. July 27, 2023) (affidavit constituted a business record under Federal Rule of Evidence 803(6) where affiant attested that "he was familiar with the records maintained by Plaintiff […] because of his job duties"); *see also Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("The affiant's position with the defendant qualified her to review the relevant business materials in an official capacity and make sworn statements based upon those materials. The court finds that the affiant had personal knowledge of the facts about which she testified." (internal quotation marks, citation, and alterations omitted)); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 04-CV-2293(JFB) (SMG), 2007 WL 74304, at *2 (E.D.N.Y. Jan. 8, 2007) ("Moreover, as an officer of [Plaintiff], Chan may offer evidence in his declaration based on personal knowledge obtained from a review of his company's records."). "[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court[,] [r]ather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017).

Plaintiff's responses to Defendants' 56.1 statement fail to controvert the facts asserted therein. Indeed, Plaintiff not only fails to admit or deny the truth of the statements asserted, Plaintiff also fails to support its purported responses with citation to particular parts of the record as required by both Local Civil Rule 56.1 and Rule 56. Because Plaintiff's responses do not

12

dispute the accuracy of the assertions, these factual statements are deemed to be admitted by Plaintiff for purposes of this motion. *See* Local Civil Rule 56.1.

More significantly, Plaintiff has proffered no evidence showing that the collision damage waiver constituted a contract between Visa and the cardholders. Plaintiff contends that a document appended to its amended complaint is evidence of a contract between Defendants and the cardholders. However, the top of the document reads "terms and conditions effective April 25, 2021" and "auto rental collision damage waiver" with "terms and conditions" effective April 15, 2021. ECF 20, at 7. There is no other identifying information on that document, such as the offeror of these terms and conditions. In light of these deficiencies, the Court directed Plaintiff's counsel at oral argument to provide a sample of the contracts to which Visa and Visa USA were parties or any documents that would indicate some promises or offer by Visa and Visa USA to the cardholders that would create a genuine issue of material fact as to the existence of an agreement between the parties. In response, Plaintiff's counsel provided the credit card benefits guides that included a collision damage waiver.[4] However, the collision damage waivers benefits under which the cardholders seek reimbursement were offered by the issuing banks: Chase, Chase Freedom, Chase Sapphire Preferred, Chase Sapphire Reserve. *See* Plaintiff's Supplemental Letter with Exhibits, ECF 66. That is, these waivers identify the financial institutions as the issuer and do not mention Visa: "Visa" is not identified nor referenced as a party in the auto rental collision damage waivers; in fact, "Visa" is not mentioned at all on these card benefits guides such that there would be an indication that the waiver was an agreement with "Visa" or offer made by "Visa." This is

---

[4] Plaintiff's counsel initially directed the Court to the credit card benefits that Defendants had submitted in support of their pre-motion conference request, but as noted during oral argument, these card benefits were offered by the issuing banks—not Visa. *See* Exhibit D, ECF 42-4. Plaintiff's counsel then pointed to its proposed exhibits in the JPTO, with each exhibit being a compilation of supporting evidence for each cardholder. *See* Plaintiff's Supplemental Letter with Exhibits, ECF 66.

13

further substantiated by the fact that the phone numbers listed on these card benefits guides are those of the issuing banks—not Visa, Inc. or Visa USA. Aside from these collision damage waivers, Plaintiff has not presented any other evidence showing a contractual agreement between Visa and the cardholders or that these waivers constituted an offer or promise by "Visa." Further, Plaintiff has not argued that, to the extent these waivers included contractual obligations for the issuing banks, that such obligations could be imputed to Visa.

*Burton v. JPMorgan Chase Bank, N.A.*, 19-CV-845 (KHJ) (LGI), 2021 WL 4222342 (S.D. Miss. Mar. 15, 2021) is instructive here. In *Burton*, the plaintiff damaged a rental vehicle, for which he alleged he had an insurance coverage from JP Morgan Chase Bank, N.A. ("Chase") based on card benefit services. *Id.* at *2. Plaintiff alleged that he was entitled to reimbursement under the policy and sued Chase, JPMorgan Chase & Company ("JPMC"), the rental company, and others, for breach of contract for failure to reimburse him. *Id.* Chase and JPMC moved to dismiss the action for failure to state a claim, arguing that neither was a party to the credit card agreement at issue. *Id.* at *1. The court agreed, finding that the business card agreement and guide to benefits under which plaintiff sought reimbursement "specifically identifie[d] [Chase Bank U.S.A. ('CBUSA'), a subsidiary of JPMC], as the issuer and lender and d[id] not mention Chase" or JPMC, *id.* at *4, and that the "contract [was] a credit card agreement" "explicitly between CBUSA and [plaintiff] and never references JPMC," *id.* at *2. The court dismissed plaintiff's breach of contract claim against Chase for failure to state a claim for breach of contract.[5] *Id.* at *4. While the *Burton* decision was at the motion-to-dismiss stage, the same legal principle applies here: the absence of a contract between Defendants Visa and Visa USA and the cardholders means that Plaintiff cannot sustain a claim for breach of contract against Visa, Inc. and Visa USA. The

---

[5] The court dismissed JPMC as a defendant for lack of personal jurisdiction on the ground that JPMC was not a party to the credit card agreement. *Id.* at *3.

14

collision damage waivers put forward by Plaintiff in this action in support of its claim do not constitute an enforceable contract between Defendants and Plaintiff.

The Second Circuit and several district courts have addressed Visa's role in the ecosystem of electronic financial transactions and how the credit card industry operates. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 228 (2d Cir. 2016). In general terms,

> a Visa or MasterCard credit card transaction is processed as follows: the customer presents a credit card to pay for goods or services to the merchant; the merchant relays the transaction information to the acquiring bank; the acquiring bank processes the information and relays it to the network (here, Visa or MasterCard); the network relays the information to the issuing bank; if the issuing bank approves the transaction, that approval is relayed to the acquiring bank, which then relays it to the merchant.

*Id.* Visa grants a license to a member bank to issue credit and debit cards with its brand name and the "card-issuing" member bank then issues a credit or debit card to a cardholder with the Visa brand name. *Wal-Mart Stores, Inc. v. Visa USA, Inc.,* 396 F.3d 96, 102 (2d Cir. 2005). The terms and conditions of the credit cards are defined and governed by the agreement between the cardholder and the issuing bank. *Cf. National Bank of Canada v. Interbank Card Ass'n*, 507 F. Supp. 1113, 117 (S.D.N.Y. 1980) ("The bank credit card is a tripartite arrangement, the first element of which is the agreement between the bank that issues a credit card and the cardholder."). The benefits that each issuing bank provides to the cardholders, including the CDWs, do not implicate Visa as a card payment network.

Plaintiff has not presented evidence sufficient to create a genuine issue of material fact that the collision damage waiver constituted a contractual agreement between Defendants Visa and Visa USA and the cardholders to defeat summary judgment. Ultimately, Plaintiff must prove each element of its breach of contract claim by a preponderance of the evidence. *See Prime Mover*

*Capital Partners, L.P. v. Elixir Gaming Techs., Inc.*, 793 F.Supp.2d 651, 674 (S.D.N.Y. 2011) (the party asserting a breach of contract claim has the burden of proving each of these elements by a preponderance of the evidence); *accord RJR Mech., Inc. v. Liberty Mut. Ins. Co.*, 618 F. App'x 29, 30 (2d Cir. 2015).

Unable to produce the existence of a contract between the parties, Plaintiff attempts to circumvent this glaring issue with various arguments, none of which the Court finds preclude summary judgment.

To the extent that Plaintiff argues that Defendants should be precluded from asserting "this new 'no contract'" defense theory because Defendants failed to raise it in the proposed JPTO or during discovery, the cases that Plaintiff cites in support of its position are easily distinguishable from the facts of this case. Pl.'s Mem. at 3-6. In *Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, the court precluded a party from asserting an affirmative defense because a defendant raised it for the first time four years into the litigation in *motions in limine*, did not mention that defense in its answer, and did not mention it in the parties' joint pre-trial order. 01-CV-3796 (PKL), 2005 WL 1026515, at *5 (S.D.N.Y. May 2, 2005). In *Potthast v. Metro-N. R.R. Co.*, plaintiff requested a late jury instruction charge after the close of evidentiary stages of the trial when plaintiff had not raised it at any point during the trial or in the pretrial memoranda. 400 F.3d 143, 154 (2d Cir. 2005). Notably, these cases concern parties attempting to raise new defenses after summary judgment ruling that were not previously asserted. However, here, Defendants raised the issue in their answer to the amended complaint, both as affirmative and negative defenses, and again reiterated such during discovery[6] and dispositive motion practice.

---

[6] Plaintiff's interrogatory No.3 requests that Defendants "[i]dentify each contract between Visa and any Benefit Administrator." ECF 42-3. Defendants' response is as follows:

16

Plaintiff's reliance on *Carlson v. Northwell Health Inc.*, 2022 WL 1304453 (S.D.N.Y. May 2, 2022) is also misplaced.  In *Carlson*, defendant filed a *motion in limine* arguing that plaintiff's claims are time-barred under applicable statute of limitations.  *Id.* at *1.  But the court precluded defendant from using "its *motion in limine* as an opportunity to seek summary judgment against plaintiff" and found that defendant forfeited its statute-of-limitations defense when it had failed to include that defense or even any oblique reference to the defense in the final pretrial order, even though defendant had asserted the statute of limitation as an affirmative defense in its answer. 2022 WL 1304453, at *1-2 (S.D.N.Y. May 2, 2022).  In doing so, the court also *sua sponte* precluded defendant from amending the final pretrial order, reasoning that such late assertion unduly prejudiced plaintiff and finding that the claims could have been addressed at summary judgment as a matter of law.  *Id.* at *1.

Here, while Defendants also did not assert the no-contract defense in the Proposed JPTO, Defendants have raised the defense in their summary judgment papers (not in a *motion in limine*) and no final pretrial order has been issued by the Court.  Defendants pursued a multi-prong strategy in defending this action: that there was no contract but that if there was, the rental customers had not properly submitted their claims.  Thus, Plaintiff has been on notice of the fact that one of Defendants' theories to defeat this action is that Plaintiff has failed to allege and proffer evidence of a contract—a necessary element to a breach of contract claim.

---

Defendants provided Plaintiff with copies of all applicable Card Benefit Guides, along with a chart identifying which Benefit Guides apply to which cases in pre-answer discovery on August 18, 2023. Each type of credit card (Preferred, Sapphire, Business, Student, etc.) has a specific Benefit Guide under which claims are processed

*Id*.  The request did not ask for contract between Defendants and the cardholders, and Defendants' response can hardly be construed as admitting as much.

17

Lastly, Plaintiff's argument that Defendants are judicially estopped from raising this defense because Defendants made inconsistent representations in this case and in a related litigation in Northern District of California, *Davis v. Visa Inc.*, 13-CV-05125 (N.D. Cal.), fares no better.[7] Pl.'s Mem. at 6-8. Plaintiff contends that in seeking dismissal of the *Davis* litigation, Visa's defense "was not that it had no contractual role or that no contract existed" but rather Visa "affirmatively leveraged the contractual framework to seek dismissal of the claims brought against it" by arguing that "the plaintiff had had breached his own obligations under the contract with Visa and thereby the contract shielded Visa from any liability." Pl.'s Opp'n at 8. Thus, Plaintiff AEZ contends that Visa's position in *Davis* is inconsistent with its defense here that no contract existed, and therefore Visa should be judicially stopped from taking both positions, "particularly given that Visa's advancement of this position in the *Davis* litigation helped Visa secure settlement of that class action." *Id.*

The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir.2010) (quotation marks and citation omitted). "[A] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (internal quotation marks omitted). If the

---

[7] In the *Davis* litigation, plaintiff sued Visa, Inc. for alleging that Visa Inc. had a policy of declining to extend its auto rental card damage waiver benefit to Visa cardholders who rented cards through Zipcar. Second Amended Class Action Complaint in *Davis*, ECF 1. Visa moved to dismiss the action for failure to state claims.

18

statements or positions in question can be reconciled in some way, estoppel does not apply. *See Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72-73 (2d Cir. 1997).

Here, Plaintiff has failed to establish that the doctrine of judicial estoppel applies because Plaintiff has not shown that the *Davis* court adopted the purported inconsistent position. Even assuming without deciding that Defendants took a position in the *Davis* litigation that is inconsistent with their position here, the court entered a minute entry order terminating the motion, noting that plaintiff's "fraud claims dismissed without prejudice, no ruling on the in injunctive relief[, and] [d]eposition may be taken." Civil Minutes, *Davis v. Visa*, ECF 33. The Court cannot determine, based on this minute order, whether it accepted Visa's position, and thus judicial estoppel cannot apply. *In re Venture Mortg. Fund. L.P.*, 245 B.R. 460, 472-73 (S.D.N.Y. Bankr. 2000) (judicial estoppel did not apply because court "[could] not tell which part, if any, [the previous tribunal] accepted"). Further, judicial estoppel does not apply because the case settled. "An agreed-upon settlement is simply a compromise and its approval by the court is not the sort of success for a claim, defense or legal theory that may trigger judicial estoppel." *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 12-CV-6509 (GHW) (MHD), 2014 WL 5525237, at *4 (S.D.N.Y. Oct. 27, 2014); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir.1997) (a party cannot be judicially estopped on the basis of prior inconsistent statements made in previous litigation that resulted in a settlement, holding that estoppel only applies when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision); *Universal City Studios v. Nintendo Co.* 578 F. Supp. 911, 921 (S.D.N.Y.1983) ("'settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel'") (quoting *Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980)), *aff'd,* 746 F.2d 112 (2d Cir. 1984).

19

Plaintiff has failed to demonstrate a genuine issue of fact as to the existence of a contract. *D3 Int'l, Inc. v. AGGF Cosm. Grp. S.p.A.*, 21-CV-06409 (LJL), 2023 WL 2390552, at *10 (S.D.N.Y. Mar. 7, 2023), *appeal dismissed* (Sept. 12, 2023).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. Accordingly, Plaintiff's sole claim for breach of contract is thereby dismissed.

The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

September 12, 2025
Brooklyn, New York